769 So.2d 179 (2000)
P. SCHMIDT, Plaintiff-appellee,
v.
BLUE CROSS AND BLUE SHIELD OF LOUISIANA, INC. and as Louisiana Health Service and Indemnity Company, Defendant-appellant.
No. 33,910-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
Writ Denied December 15, 2000.
*180 Charles A. O'Brien, Baton Rouge, Counsel for Appellant.
Mayer, Smith and Roberts by Steven E. Soileau, Shreveport, Counsel for Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
CARAWAY, J.
Following plaintiff's drug overdose which the emergency medical physician described as "intentional," the health insurer first denied coverage for plaintiffs medical expense citing a policy exclusion for expenses for "intentionally self-inflicted injuries." After suit was filed and the insurer mistakenly paid the hospital's medical expenses, the parties presented for trial the issue of penalties and attorney's fees for the insurer's denial of coverage and untimely payment. Finding that the trial court's grant of penalties and attorney's fees was an improper ruling under La. R.S. 22:657, we reverse the trial court's judgment.

Facts
This dispute arose over the failure of Louisiana Health Service and Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana, Inc. ("Blue Cross"), to pay the insured, Patricia Schmidt ("Schmidt"), for medical treatment at Highland Hospital ("Highland"). Schmidt was taken to Highland emergency room in Shreveport on September 27, 1998. Upon admission to the hospital, Schmidt reported that she had taken 20 Xanax pills and 20 Trazodone pills. The bill from Highland for Schmidt's treatment was $4,282.45.
Highland's medical records list Schmidt's complaint upon admission as a drug overdose. Specifically, the records contain Schmidt's statement that "she could not take it anymore with four children and a decreasing income." The clinical impression of the Highland physician was "drug overdose (intentional)." After Schmidt was treated and stabilized, she was transferred to Charter-Brentwood, a mental health facility, for further monitoring and treatment.
Blue Cross denied Schmidt's claim for the medical treatment based on an exception found in its benefit plan excluding medical coverage "for intentionally self-inflicted injury or sickness." Schmidt disputed Blue Cross's adverse decision and provided Blue Cross a letter dated December 15, 1998 from her psychiatrist, Dr. Paul Ware ("Dr.Ware"), concerning her mental condition at the time of her alleged intentional overdose. Dr. Ware's letter provides in pertinent part:
"I was shocked that her disability was denied because of, I guess, her intentional suicidal behavior.
The patient's suicidal behavior was an act of desperation when her mood disorder was so severe that she was not thinking clearly and making good decisions for herself and the overdose of medication was clearly a result of her mental illness and not a self-induced, voluntary bit of behavior."
Dr. Ware first consulted with Schmidt regarding the overdose incident on the day following her admission to Highland. His progress notes on that date, contained in the Highland records, reported:
"Interview reveals true suicidal attempt and patient knows she needs help and *181 accepted hospitalization at Charter Brentwood."
Despite Dr. Ware's letter, Blue Cross continued to deny Schmidt's claim. Schmidt eventually paid Highland's bill. After Schmidt filed this suit against Blue Cross for failure to pay her claim, Blue Cross accidently paid Highland for the claim. Highland then refunded $4,282.45 to Schmidt.
At the trial of this matter, the only issue concerned the question of penalties and attorney's fees pursuant to La. R.S. 22:657. Schmidt was the only witness to testify. Also admitted into evidence were Schmidt's records from Highland, the letter from Dr. Ware, and other correspondence. After considering all of the testimony and documentary evidence, the trial court ruled in favor of Schmidt, stating:
"Alright. A review of this entire record will reveal that the only expert opinion that we do have is Dr. Ware's opinion and ... it's the finding of the court that this claim was covered and that Blue Cross Blue Shield arbitrarily and capriciously denied payment of said claims and penalties are in order."

Applicable Law
This dispute centers on the application of La. R.S. 22:657. La. R.S. 22:657 provides in pertinent part:
All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.
The provisions of La. R.S. 22:657 are penal in nature and are to be strictly construed. Colville v. Equitable Life Assurance Society of the United States, 514 So.2d 678 (La.App. 2d Cir.1987). Whether the insurer has denied the insured's claim on just and reasonable grounds such as would put a reasonable and prudent business man on guard is a question of fact to be determined from the facts and circumstances of each case and the trial court's findings in this regard should not be disturbed unless shown to be clearly wrong. Colville, supra; McCord v. Time Insurance Company, 521 So.2d 558 (La.App. 1st Cir.1988); Hoffpauir v. Time Insurance Company, 536 So.2d 699 (La.App. 3d Cir. 1988).
It is well established that insurance policies are to be read broadly in favor of coverage and that ambiguities are construed against the insurer. Insurance Co. of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979). Furthermore, exclusions are to be strictly construed in favor of coverage against the insurer if more than one interpretation is possible. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983); LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978).
In a similar penal setting involving worker's compensation and the employer's failure to pay benefits timely, our supreme court discussed the allowance to the employer to avoid penalties and attorney's fees under La. R.S. 23:1201 upon a showing of a "reasonably controverted" claim. Brown v. Texas-La Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885. The court stated that "in order to reasonably controvert *182 a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits." Id. at 890. The court must ascertain whether the employer "engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." Id.

Discussion
This dispute does not require a determination of whether coverage for Schmidt's medical expenses is excluded from the health care policy. Nevertheless, it does require that the policy language excluding expenses "for intentionally self-inflicted injuries" be construed in the context of the factual and medical information which Blue Cross possessed at the time of its assessment of Schmidt's claim. Blue Cross's interpretation of the policy exclusion and its information regarding the overdose incident must have given it "just and reasonable grounds" to controvert the claim. We will therefore first review the policy language and then consider the facts of the overdose incident to determine if Blue Cross acted reasonably.
In interpreting "intentionally self-inflicted injur[y]," Schmidt does not argue that all suicide attempts are unintentional and outside the scope of this phrase, or that such attempts can never be the result of a person's conscious volition. Yet Schmidt argues that her actions were unintentional, and in the opinion of Dr. Ware, "clearly resulted from mental illness and not a self-induced, voluntary bit of behavior." At trial, Schmidt testified to having no recollection of what happened at her home at the time of the overdose, and therefore she denied attempting suicide. From this evidence, the overdose can be considered involuntary and accidental.
In construing this policy exclusion, we first ask whether this phrase can have a commonly understood meaning so that Blue Cross reasonably attempted its application or whether the phrase is ambiguous. Despite Schmidt's emphasis on the word "intentionally," the word is used as an adverb modifying the controlling adjective, "self-inflicted," which, in turn, describes the excluded injuries. Any non-negligent, self-inflicted act causing serious injury, such as a large drug overdose, can be reasonably considered to be caused by a person acting with a less than stable mental state. A suicide is such a self-inflicted act. Nevertheless, despite the disturbed mental state of the actor in a suicide, definitions commonly given for suicide also utilize the word intentional.[1] Thus, the idea of a reflective and rational mental state which the word "intentionally" can suggest does not predominate in this phrase. The prevalent idea reflected in this language involves the mental state of one deliberately causing "self-inflicted" injury. We do not, therefore, find this combination of words confusing and ambiguous since the notion of suicide-related injuries can be readily understood from this policy language. We therefore initially hold that Blue Cross can apply this policy exclusion to medical expenses that may arise from a person's attempted suicide.
Next, we must consider whether Blue Cross had "just and reasonable grounds" from the information regarding the overdose incident to consider it an attempted suicide. More specifically, upon receiving Dr. Ware's opinion that the overdose was not a "self-induced, voluntary bit of behavior," could Blue Cross continue to reasonably dispute that the overdose was an intentionally self-inflicted act? The trial court's brief ruling in this matter that Dr. Ware's expert opinion was decisive, indicated that Blue Cross did not have any other just and reasonable grounds to continue *183 to controvert the policy coverage. We disagree.
When intent is disputed in a civil or criminal action, proof of intent or state of mind is rarely established as a fact by direct evidence but may be inferred from the facts regarding the individual's actions and other circumstances. Ledet v. Burgess, 93-600 (La.App. 5th Cir.2/9/94), 632 So.2d 1185; State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382; La. R.S. 14:10. Direct evidence of intent comes from the actor herself, who, as in this case, can admit or deny her state of mind.
Dr. Ware's brief opinion letter to Blue Cross was no doubt based largely upon Schmidt's denial of her intent regarding the events of September 28, and his prior treatment of her.[2] Blue Cross was entitled to weigh the direct evidence of Schmidt's denial of attempted suicide and Dr. Ware's opinion supporting her claim against the other facts which inferred an "intentionally self-inflicted" injury. Those facts included the Highland records which reflect that Schmidt informed the emergency room personnel of the specific number of pills she had taken"20 pills of Xanax and 20 pills of Trazodone"and the time when the pills were taken. She also was able to recall that she had a glass of wine and had possibly taken Wellbutrin and Prozac. One medical form signed by a physician included choices for a medical opinion presented under the section "Clinical Impression," listing "Drug Overdose (Intentional/Accidental)" and "Suicide Attempt/Ideation." The copy of that record presented in evidence indicates that the physician circled the drug overdose "intentional" language.[3]
From these reports from the medical personnel who recorded Schmidt's statements and diagnosed her condition on the evening of September 28, there are significant inferences and contemporaneous medical conclusions that the overdose was an "intentionally self-inflicted" act and attempted suicide. Despite her denial of an intent to commit suicide and her testimony that she has no knowledge of how the drug overdose occurred, we believe that Blue Cross had "just and reasonable grounds" under these circumstances to contest the policy coverage. This is not to say that on this record the trial court's judgment that the coverage exclusion was not proven by Blue Cross is manifestly erroneous. That issue is not before this court. On the separate issue concerning the imposition of penalties and attorney's fees, we rule that the trial court misapplied the test of La. R.S. 22:657 and was clearly wrong.

Conclusion
The ruling of the trial court awarding penalties and attorney's fees is reversed. Costs are assessed to appellee.
REVERSED.
NOTES
[1] Suicide is defined as: "The act of killing oneself intentionally." Webster's New Universal Unabridged Dictionary, 1822 (2d ed.1983).
[2] Other than Dr. Ware's one page letter of December 15, 1998, the substance of which is quoted above, the record does not detail the information upon which Dr. Ware's opinion was based.
[3] The quality of the copy of this document in the record is poor, but it appears that the above choices were listed. Schmidt does not dispute that the choice of intentional drug overdose was selected.