843 So.2d 657 (2003)
S. G., Plaintiff-Appellant,
v.
CITY OF MONROE, Jerry Ellerman, and Meade O'Boyle, Defendants-Appellee.
No. 37,103-CA.
Court of Appeal of Louisiana, Second Circuit.
April 11, 2003.
*658 Todd G. Newman, Monroe, for Appellant.
McLeod Verlander, by David E. Verlander III, Monroe, for Appellee, Dr. Meade P. O'Boyle.
Before STEWART, CARAWAY and MOORE, JJ.
CARAWAY, J.
In this case, the defendant/pediatrician rendered a report to law enforcement concerning the sexual abuse of a child which she examined. The defendant now seeks immunity for negligence from this suit brought by the plaintiff, who was subsequently arrested. Finding that the immunity under La. C. Ch. art. 611 applies, the trial court rendered summary judgment in favor of the defendant. For the following reasons, we affirm the judgment.

Facts and Procedural History
The plaintiff, S.G., and his ex-wife shared joint custody of their two-year old son. On July 13-14, 1999, S.G. exercised his scheduled overnight visitation with the boy. On the morning of July 14th, S.G. contacted his ex-wife and requested that *659 she take care of the child while he mowed his lawn. S.G. was to resume visitation after he finished the chore. The mother agreed and retrieved her son.
When the mother changed the child's diaper, she noticed what appeared to be blood on the child's buttocks. Distressed by the incident, the mother took to the child to her family physician, Dr. Randy Head, who examined him. Fearing the serious likelihood of abuse, Dr. Head recommended that the mother have the child examined by the defendant, Dr. Meade O'Boyle, who is a pediatrician.
Later that day, Dr. O'Boyle also examined the child and noticed apparent abrasions and dried fresh blood around the child's rectal area. Due to her concern that there was internal injury to the anus, Dr. O'Boyle referred the child to Dr. Duke McHugh, a gastroenterologist. That same day, Dr. McHugh conducted a scope of the area that revealed no internal damage.
Thereafter, as a mandatory reporter under La. Ch. C. art. 603, Dr. O'Boyle filed a report of abuse in accordance with La. Ch. C. art. 610. The report stated:
Examination of the anus reveals blood and erythema in the buttocks crease and around the anus. He has fresh abrasion around the anus. He has some spasm of the external sphincter with swelling around the anal orifice. There is blood coming out of the anal orifice.
My impression is that this child has been raped.
The diaper that was changed around 9:30 this morning was brought in. There was no obvious blood on the diaper, but there was a large pubic hair which was black in the diaper as well as some other small fragments of something which I could not identify. This diaper was folded up and sent as evidence in the rape kit. I also sent the other diaper which was also sent with the rape kit. I then handed the rape kit, unsealed, to Detective Ellerman who hand-carried it to Glenwood where further examination will be done under anesthesia by Dr. McHugh as this child had blood coming from the rectum and I could not ascertain where the blood was from. I did not see any frank lacerations in the wall as the child was so upset and fighting so much, but the photographs may show a laceration which I could not see while trying to hold him still.
After local law enforcement involvement in the matter, S.G. was arrested on July 16, 2000.
S.G. filed the present suit against the City of Monroe, Detective Jerry Ellerman, who investigated the report of abuse, and Dr. O'Boyle.[1] The suit was filed prior to plaintiff's July 26, 2000 grand jury indictment for one count of molestation of a juvenile. Specifically, S.G. alleged in his petition that Dr. O'Boyle was negligent in failing to properly conduct a medical exam on the child. He further alleges that Dr. O'Boyle failed to rule out any other possibilities for the child's condition and obtain a complete history to support her diagnosis. S.G.'s claim rests upon Dr. O'Boyle's filing of the above medical report which indicated that the child had been raped. S.G. also claimed that Dr. O'Boyle committed libel because she knew the diagnosis was unsubstantiated and false.
Dr. O'Boyle moved for summary judgment on the ground that under La. Ch. C. *660 art. 611, she is immune from civil liability arising from the making of a report of suspected child abuse. Moreover, Dr. O'Boyle argued that summary judgment was appropriate to dismiss the libel action because she never identified S.G. as the perpetrator of the offense, a fact necessary to meet his burden of proof on this claim.
The summary judgment hearing was originally scheduled for February 14, 2002. However, at the request of S.G.'s attorney, the parties agreed to postpone the hearing to May 6, 2002 to allow counsel time to prepare his opposition to the motion. In late April or early May, S.G.'s attorney had apparently scheduled a meeting with Dr. McHugh, in order to prepare an affidavit in opposition to the summary judgment. However, due to a death in the attorney's family on April 27, 2002, the meeting was cancelled and rescheduled. Dr. O'Boyle's attorney agreed to continue the hearing for an additional three days, until May 9, 2002. It was not until May 8, 2002 that S.G.'s attorney filed the opposition to the summary Judgment that included the supporting documentation regarding Dr. McHugh's medical examination of the child.
On the morning of the hearing, Dr. O'Boyle's counsel objected to the court's consideration of the opposition and attached exhibits on the grounds that it had not been timely filed pursuant to La. C.C.P. art. 966(B) and the local court rules. The court sustained the objection, indicating that it would neither consider the opposition memorandum or attachments, nor allow S.G.'s counsel to orally argue the opposition. After the hearing, the court took the matter under advisement and issued written reasons for judgment, granting Dr. O'Boyle's summary judgment.
On appeal, S.G. makes three arguments. He first contends that the trial court erred in failing to consider his opposition to the summary judgment. S.G. also argues that the trial court erred in concluding as a matter of law that Dr. O'Boyle was immune from civil suit because the immunity set forth in La. Ch. C. art. 611 does not extend to her "ultimate diagnosis," which he argues she made with reckless disregard for the truth. Finally, S.G. contends that even if we construe the ultimate diagnosis as part of the initial report, genuine issues of fact exist as to Dr. O'Boyle's good or bad faith.[2]

Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); McKoin v. State Farm Fire and Cas. Co., 36,429 (La. App.2d Cir.10/23/02), 830 So.2d 437. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Leckie v. Auger Timber Co., 30,103 (La.App.2d Cir.1/21/98), 707 So.2d 459. When a motion is made and supported as required by La. C.C.P. art. 966, the adverse party may not rest on the mere allegations or denials of his pleading, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967; McKoin, supra. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of *661 whether summary judgment is appropriate. Kennedy v. Holder, 33,346 (La. App.2d Cir.5/10/00), 760 So.2d 587.
Under the provisions of La. C.C.P. art. 966(C)(2), when a party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but instead to point out the absence of factual support for one or more elements essential to such claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Row v. Pierremont Plaza, L.L.C., 35,796 (La.App.2d Cir.4/3/02), 814 So.2d 124, 128, writ denied, 02-1262 (La.8/30/02), 823 So.2d 952.

Discussion
In the present case, because Dr. O'Boyle did not bear the burden of proof at trial, her burden on the summary judgment was to point out an absence of factual support for one or more elements essential to S.G.'s claim. La. C.C.P. art. 966(C)(2). Dr. O'Boyle sought summary judgment urging that because her report was made in good faith, the immunity provisions protected her from liability as a matter of law.
A physician who examines or treats a child is a mandatory reporter as defined by La. Ch. C. art. 603. A mandatory reporter who suspects that a child has been the subject of abuse endangering either his physical or mental well-being is obligated to make a report of the suspected abuse to either the local child protection unit or law enforcement agency or to a state law enforcement agency. La. Ch. C. arts. 609-610. Further, La. Ch. C. art. 611 provides that:
A. Any person who in good faith makes a report, cooperates in any investigation arising as a result of such report, or participates in judicial proceedings authorized under the provisions of this Chapter, or any caseworker who in good faith conducts an investigation, makes an investigative judgment or disposition, or releases or uses information contained in the central registry for the purpose of protecting a child, shall have immunity from civil or criminal liability that otherwise might be incurred or imposed.
B. This immunity shall not be extended to:
(1) Any alleged principal, conspirator, or accessory to an offense involving the abuse or neglect of the child.
(2) Any person who makes a report known to be false or with reckless disregard for the truth of the report.
S.G. argues that Dr. O'Boyle's alleged liability is based upon her "ultimate diagnosis" which, though included in her initial report, was not protected by the immunity provision of La. Ch. C. art. 611. Included within the initial report filed by Dr. O'Boyle was the language, "[m]y impression is that the child has been raped." It is this statement by Dr. O'Boyle that S.G. contends is "an ultimate diagnosis" that excludes her from the immunity provisions. We find that this argument draws a distinction which is not contemplated by the law.
La. Ch. C. arts. 610(B)(2) and (8) require that the report of a mandatory reporter *662 contain information regarding the "nature, extent, and cause of the child's injuries..." and "any other information which the reporter believes might be important or relevant." The inclusion of the physician as a mandatory reporter under Article 611 contemplates the possibility that medical doctors would provide, in addition to facts, diagnoses in the alleged child abuse cases brought before them. Certainly, one of the primary responsibilities of the physician is diagnosis. In our view, any attempt to separate the reporting of facts and diagnoses in the context of this statutory immunity is misplaced.
Moreover, the immunity afforded the mandatory reporters is meant to encourage those with reasonable cause for suspicion to report suspected cases, free of the chilling effect presented by the threat of lawsuits. To draw the distinction urged by S.G. would also undermine that purpose. We decline to do so here and find the immunity provision of La. Ch. C. art. 611 applicable to Dr. O'Boyle's entire report, including the expression of her opinion that the child had been raped.
Alternatively, S.G. contends that summary judgment was inappropriate because a genuine issue of material fact exists as to Dr. O'Boyle's good faith in filing the report. Specifically, S.G. contends that the deposition of Dr. Scott Benton, plaintiff's expert witness in child abuse, raises a material issue of fact as to Dr. O'Boyle's recklessness in concluding that the child was raped.
Malice, intent, and other conditions of mind of a person may be alleged generally by the plaintiff. La. C.C.P. art. 856. When intent is disputed in a civil or criminal action, proof of intent or state of mind is rarely established as a fact by direct evidence, but may be inferred from the facts regarding the individual's actions or other circumstances. Schmidt v. Blue Cross and Blue Shield of Louisiana, Inc., 33,179 (La.App.2d Cir.9/27/00), 769 So.2d 179, writ denied, 00-3011 (La.12/15/00), 777 So.2d 1234; Ledet v. Burgess, 93-600 (La.App. 5th Cir.2/9/94), 632 So.2d 1185; State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382; La. R.S. 14:10. Direct evidence of intent comes from the actor herself, who, as in this case, can admit or deny the alleged state of mind. Schmidt, supra. Nevertheless, when the plaintiff's general allegations are challenged in a motion for summary judgment, the plaintiff must oppose the motion with some circumstantial evidence, if not direct evidence, of the bad faith or other condition of mind of the accused.
In support of her motion, Dr. O'Boyle submitted the following documents:
1) The medical records of Dr. O'Boyle's examination of the child including the above quoted written report sent to law enforcement.
2) Dr. O'Boyle's preliminary examination testimony of October 29, 1999.
3) Photographs taken by Dr. O'Boyle depicting trauma to the child's perianal area.
4) The medical records of the exam performed by Dr. Duke McHugh.
5) An affidavit of Dr. Head.
6) An affidavit of Dr. Shelly McCormick, a board certified pediatrician.
7) S.G.'s July 26, 2000 grand jury indictment for one count of molestation of a juvenile.
8) An excerpt from the preliminary examination transcript including the trial court's probable cause ruling.
9) The deposition of Dr. Scott Benton, a physician specializing in forensic pediatrics.
*663 In their affidavits, Drs. Randy Head and Shelly McCormick expressed their professional opinions that Dr. O'Boyle took the proper steps in notifying the authorities and agreed with her opinion that the child had been the victim of abuse. In support of her conclusion, Dr. O'Boyle also submitted photographs that she took showing the condition of the child on the day she saw him. The medical records of Dr. McHugh confirmed that his examination revealed no internal injury. Additionally, the criminal court's determination of probable cause for arrest at the preliminary examination and the grand jury indictment reveal that independent sources also found validity to the claim that the child was physically abused.
The record also shows that Dr. O'Boyle informed Dr. McHugh of her belief that penetration had taken place and was concerned that the child's anus had been torn. Although Dr. McHugh found no internal injury, Dr. O'Boyle still felt that penetration was attempted, although not completed. She did not feel that the injuries could be attributed to diaper rash because the erythema and abrasions extended up the crease of the buttocks.[3] In her opinion, the injuries were caused by trauma in an area not normally affected by diaper rash. Dr. O'Boyle explained that a physician's definition of penetration is different than a legal definition. In terms of this case, her definition of penetration included her belief that the penis had gone up against the anus and tried to get in and "slipped up into the crack of the buttocks." Dr. O'Boyle admitted that she did not attempt to rule out any other cause of the injuries and took no scrapings from the child's fingernails to determine whether the abrasions could have been caused by scratching.
Dr. Scott Benton's testimony revealed that he did not believe it was bad faith for Dr. O'Boyle to make a report concerning this child. He admitted that even another physician's contrary opinion in a case does not relieve a doctor of her obligation to render a good faith report to the authorities. Dr. Benton admitted that Dr. O'Boyle's findings were "potentially consistent with abuse," although he believed he would have had a different opinion and would not have reported the case to the authorities. Nevertheless, Dr. Benton did not believe that Dr. O'Boyle had any reasonable factual basis for the conclusion that the child had been raped after her receipt of Dr. McHugh's report. Dr. Benton was aware of the fact that Dr. McHugh disagreed with Dr. O'Boyle's opinion. He felt, however, that she was correct in obtaining a second opinion regarding the extent of the trauma. Dr. Benton expected that Dr. O'Boyle, after hearing Dr. McHugh's report, would have modified her opinion based upon the evidence showing no internal trauma. Dr. Benton could not say that any of Dr. Boyle's actions were done in bad faith or with reckless disregard for the truth, which he defined as "an intent to do harm...." He would not say that the facts she reported were not a reportable event or that she should not have filed a report.
We find that this evidence is sufficient to show the absence of factual support to prove that Dr. O'Boyle made a "report known to be false or with reckless disregard for the truth of the report." La. Ch. C. art. 611. The obvious point of disagreement between the physicians in this case is Dr. O'Boyle's conclusion that the child had been raped. Nevertheless, we find such a difference of opinion irrelevant to the issue of whether or not Dr. O'Boyle filed the report falsely or with reckless disregard *664 for the truth. The crucial issue is Dr. O'Boyle's subjective belief in making the report. While Dr. Benton clearly disagreed with Dr. O'Boyle's opinion that the child had been raped, he indicated on two occasions that he did not believe that she filed a report in bad faith. In fact, he declined to reach such a conclusion, admitting that he was not in a "position to judge her feelings, or her understanding at that time."
S.G. apparently contends that, when faced with Dr. McHugh's report of his endoscopic examination, she merely adjusted her view on how the injury occurred, holding on stubbornly to her diagnosis of rape.[4] In view of Dr. Benton's testimony, the evidence of Dr. O'Boyle's reaction to Dr. McHugh's findings does not allow for a significant inference of reckless disregard or bad faith. Moreover, it is apparent that in Dr. O'Boyle's medical opinion, penetration was broadly enough defined to include what she believed to have occurred in this case. While such a definition obviously invites disagreement, we cannot say that an opinion based upon such a subjective belief demonstrates bad faith. Indeed, even a mistaken diagnosis can be made in good faith.
Likewise, the evidence presented by Dr. O'Boyle on the motion for summary judgment clearly shows that S.G. was never formally indicted or prosecuted for the crime of rape, but rather molestation of a juvenile. The crime of molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. La. R.S. 14:81.2. Dr. O'Boyle's opinion did not result in an arrest for the crime of rape and therefore is inconsequential to any damages S.G. suffered because of his arrest. Dr. O'Boyle's report of abrasions around the anus is not questioned by S.G. as having been made in bad faith, and such report ultimately resulted in a charge of only lewd conduct which is something less than actual rape. S.G.'s ability to prove causation was therefore successfully called into question by the motion for summary judgment.
Finally, S.G.'s objection to the trial court's rejection of his opposition evidence has no merit. As it relates to the contested issue of Dr. O'Boyle's good faith, S.G.'s opposition to summary judgment duplicates facts and information already before the court by way of pleadings and evidence submitted by Dr. O'Boyle in support of her summary judgment motion. A copy of the initial report filed by Dr. O'Boyle and a portion of Dr. Benton's deposition, which Dr. O'Boyle submitted in its entirety in support of her motion, was completely duplicated in his opposition. Likewise, the facts established by the preliminary examination testimony of the child's mother were either replicated in Dr. O'Boyle's preliminary examination testimony or irrelevant to the issues to be disposed of on summary judgment. Although Dr. *665 McHugh's affidavit and his preliminary examination testimony were not specifically introduced to the court, S.G.'s allegations of Dr. McHugh's findings and Dr. O'Boyle's reaction thereto, as indicated above (note 4), remain before us on the pleading, unchallenged by evidence in support of the summary judgment. These facts include Dr. McHugh's examination of the child, his disagreement with Dr. O'Boyle over her diagnosis, and the fact that she changed her description of how the injuries may have been inflicted after he found no internal injuries. Therefore, while we do not believe that the trial court abused its discretion, the factual opposition rejected by the trial court as untimely, offers no additional facts to those otherwise shown by the pleadings, testimony and documentation in the record. See, Mallory v. Pineapple Management Services, Inc., 02-0126 (La.App. 1st Cir.12/31/02), 837 So.2d 693.

Conclusion
For the foregoing reasons, we affirm the summary judgment in favor of Dr. O'Boyle at appellant's costs.
AFFIRMED.
NOTES
[1] The record shows that the City of Monroe and Detective Ellerman were dismissed from the suit on May 9, 2002.
[2] On appeal, S.G. has not complained about the trial court's dismissal of the libel claim.
[3] Lab test results of July 15, 1999, were negative for the yeast associated with diaper rash.
[4] As alleged in paragraphs 16 and 17 of S.G.'s petition, when Dr. O'Boyle was informed of Dr. McHugh's findings, she "then changed her story and said that plaintiff must have rubbed his penis on the child's rear end to cause the abrasions," and she persisted with her diagnosis of rape. These factual allegations are not contested by the evidence presented in support of the summary judgment.