THERIOT, J.
l2The plaintiff-appellant, the Louisiana Board of Ethics (“BOE”), appeals a final judgment rendered by the Louisiana Ethics Adjudicatory Board (“EAB”), granting a motion in limine and a motion for summary judgment in favor of the defendant-appellee, Donald Villere. For the following reasons, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL BACKGROUND
This dispute arises from statements made by Mr. Villere during his campaign for the Office of Mayor of the City of Mandeville in March of 2010. Mr. Villere won the mayoral election of March 27, 2010 by a three-vote majority victory over his opponent, former Mandeville City Councilperson, Trilby Lenfant. On March 23 or 24, 2010, in the days immediately preceding the election, Mr. Villere distributed or caused to be distributed a written campaign flyer about Ms. Lenfant entitled “Ms. Lenfant claims to be a reformer. However, this Good Government Candidate has Numerous Serious Conflicts of Interests.”
The campaign flyer was mailed to approximately 4,000 residents in Mandeville and contained, inter alia, the following seven statements:
• On Ms. Lenfant’s 2009 personal finance disclosure report, she reports that her husband works for the same insurance company that provided the City’s insurance. And she VOTED THREE TIMES to give the contract to her husband’s company.
• Ms. Lenfant’s husband is an officer of The Preserve, LLC and in business with Rene Ferran. Ms. Lenfant has been the director, president of The Preserve Owners Association, Inc. Ms. Lenfant introduced and VOTED FOR legislation, Ordinance 05-05, authorizing the city to purchase property from none other than her husband’s partner in The Preserve, LLC, Rene Ferran.
• Again, as mayor pro tem, Ms. Len-fant VOTED FOR and signed legislation to rezone a lot, Ordinance 09-35, owned by her husband’s Ispartner, Rene Ferran, into two lots, increasing the amount of money they would make on the property.
• Ms. Lenfant’s house in The Preserve is appraised at nearly $560,000. However, her next-door neighbor’s house is for sale at $1.6 million. Lots in The Preserve sell for about $300,000, and the average home value ranges from $1.4 to $1.8 million.
• On Ms. Lenfant’s 2009 personal finance disclosure report, in addition to her personal property in The Preserve that gets the homestead exemption, Ms. Lenfant:
0 owns an additional 124 acres in The Sanctuary, but she’s only paying $2,307.02 in property taxes.
0 owns another 98 acres in The Sanctuary, but she’s only paying $157.41 in property taxes. In both cases, she is claiming a special exemption for a reduction in property taxes.
Is she really paying her fair share of property taxes or is she getting special treatment?
• After Hurricane Katrina, Ms. Len-fant took city-owned portable air *943 conditioners and generators for her personal use. This city-owned property was not returned until instructed to do so by the legislative auditors — 4 YEARS LATER!
• It’s funny how Ms. Lenfant voted for a six-inch, fill-limit ordinance only AFTER she filled her personal property with six feet of fill.
Thereafter, on March 25, 2010, Mr. Vil-lere distributed or caused to be distributed a written email about Ms. Lenfant. The email contained the subject line “You Be the Judge,” and was entitled “The Truth Detector.” The email stated:
Dear Neighbor, My recent mailer detailing Ms. Lenfant’s highly questionable behaviors as your City Councilperson is based on extensively-researched and proven facts. Ms. Lenfant’s response offers an abundance of political cliches designed to deflect her responsibility for each of these truths. Her robo-call was full of political rhetoric and posturing. My opponent offers no reasonable response; she cries foul, but she gives no information for you the voter to consider. Every item in the mailer is public record and true.
14Once these facts were made known to me, I felt it my civic responsibility to make sure that you had all the facts before you voted. You be the judge on Saturday. You decide who will best serve you as Mayor of your city.
Sincerely, Donald Villere.
The next day, on March 26, 2010, the BOE received a confidential complaint alleging that Mr. Villere knowingly distributed campaign materials that contained false and/or misleading statements about Ms. Lenfant. The BOE investigated the allegedly false and/or misleading campaign statements over the course of approximately twelve months. During the investigative period, the BOE, through its agents and/or attorneys, deposed Mr. Villere; interviewed Mr. Villere’s paid political consultant, Debbie Smith; interviewed Ms. Lenfant and other interested persons, identified as Jay Lenfant, Randy Dixon, and David Glass; reviewed information contained on websites; and reviewed other relevant documents.[1]
The results of the investigation were summarized in a confidential investigative summary, dated March 7, 2011, which was submitted to the BOE for its consideration and deliberation. On March 17, 2011, shortly before the tolling of the one-year prescriptive period detailed by La. R.S. 42:1141(C)(3)(c), by a majority vote of the members present at its meeting, the BOE voted to issue formal charges against Mr. Villere. The BOE alleged two counts of violations of La. R.S. 42:1130.4.[2] The charges were filed with the Division of Administrative Law for the EAB and the case was assigned to EAB-Panel A.
*944 | r,After filing formal charges against Mr. Villere, the BOE conducted pretrial discovery in preparation for the presentation of its case against him. In pertinent part, the BOE deposed Jerry Coogan, a Mandeville City Councilperson, on May 24, 2011, and accepted affidavits from Ms. Lenfant and John Lenfant, IV, dated February 5, 2014, which the BOE attached in support of its memorandum in opposition to Mr. Villere’s motion for summary judgment. In addition, the BOE deposed Mr. Villere for a second time on October 4,2013.
The record reflects that Mr. Villere was first deposed prior to the issuance of formal charges on March 3, 2011. Thereafter, on June 29, 2011, the BOE notified the Division of Administrative Law of its intent to depose Mr. Villere for a second time. The BOE stated that it sought to depose Mr. Villere in order to question him regarding newly discovered evidence appurtenant to his knowledge of the allegedly false campaign statements. Mr. Vil-lere filed a motion to quash the subpoena, arguing that he had previously been deposed. The EAB denied the motion to quash, and the denial of the motion came before this court through a supervisory writ application submitted by Mr. Villere.
In an unpublished opinion, this court denied the writ application and upheld the EAB’s denial of the motion to quash, reasoning that the BOE had proven good cause for its request for a second deposition. Villere v. Louisiana Bd. of Ethics, 11-1309 (La.App. 1 Cir. 3/30/12), 2012 WL 1079316, *4 (unpublished), writ denied, 12-0963 (La. 6/22/12), 91 So.3d 970. There, this court explained that the BOE sought to depose Mr. Villere based upon its acquisition of new information substantially related to the ultimate issue underlying the charges and found that a second deposition was | finecessary as it would lead to relevant discoverable information and was not unreasonably vexatious. Villere, 2012 WL 1079316 at *3.
In addition, during the pendency of the ethics proceedings against Mr. Villere, this court decided Ellis v. Louisiana Bd. of Ethics, 14-0112 (La.App. 1 Cir. 12/30/14), 168 So.3d 714, writ denied, 15-0208 (La. 4/17/15), 168 So.3d 400. Shortly thereafter, on January 27, 2015, Mr. Villere filed a motion in limine, seeking to preclude the BOE from using evidence obtained through discovery conducted after the issuance of formal charges, and a motion for summary judgment,[3] seeking the dismissal of all charges against him. The BOE opposed the two motions.
On July 24, 2015, the EAB heard oral arguments on the motions, admitted documentary evidence, and took the matter under advisement. On September 15, 2015, the EAB issued a final judgment granting the motion in limine and the motion for summary judgment. The EAB ordered the exclusion of all evidence discovered by the BOE after March 17, 2011, and ordered the dismissal of all charges against Mr. Villere. The BOE now appeals,
ASSIGNMENTS OF ERROR
The BOE raises the following assignments of error:
1. The EAB erred as a matter of law in concluding that the BOE did not fully complete its investigation, since discovery was conducted following the filing of formal charges.
*945 2. The EAB erred as a matter of law in granting the motion in limine concluding that the BOE is precluded from using any evidence discovered after the filing of formal charges.
3. The EAB erred as a matter of law in granting the motion in limine interpreting Ellis v. Louisiana Bd. of Ethics to conclude, as a matter of law, that the BOE is precluded from not only using affidavits 17obtained from its own witnesses in an opposition to a motion for summary disposition, but from conducting any discovery following the filing of formal charges.
4. The EAB erred as a matter of law in concluding that there is no genuine issue as to material fact that Mr. Villere acted with reckless disregard for the truth or that he possessed a high degree of awareness of the probable falsity of the campaign statements when he published and distributed a campaign flyer regarding Ms. Lenfant.
5. The EAB erred as a matter of law in concluding that the BOE did not prove that a genuine issue of material fact existed as to whether Mr. Villere published his campaign flyer regarding Ms. Lenfant with actual malice — reckless disregard for the truth and a high degree of awareness of the probable falsity of the statements — or whether he entertained serious doubts as to the truth of his publication.
STANDARD OF REVIEW
Louisiana Revised Statute 42:1143 provides that all proceedings conducted by the EAB shall be subject to and in accordance with the Louisiana Administrative Procedure Act (“APA”), La. R.S. 49:950, et seq. The APA specifies that judicial review shall be confined to the record as developed in the administrative proceedings. La. R.S. 49:964(F). We may reverse or modify the decision of the EAB only if the substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: 1) in violation of constitutional or statutory provisions; 2) in excess of the statutory authority of the agency; 3) made upon unlawful procedure; 4) affected by other error of law; 5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or 6) not supported and sustainable by a preponderance of the evidence. La. R.S. 49:964(G). However, we owe no deference to the legal findings of the EAB; rather, we review questions of law de novo and render a judgment based on the record. Louisiana Bd. of Ethics in re Great Southern Dredging, Inc., 15-0870 (La. App. 1 Cir. 5/27/16), 195 So.3d 631, 634.
DISCUSSION
The Legislature enacted the Code of Governmental Ethics (“Code of Ethics”) in order to establish ethical standards for the conduct of elected officials and state employees to protect against conflicts of interest between their private interests and the duties of their positions. Great Southern Dredging, Inc., 195 So.3d at 634 (citing La. R.S. 42:1101(B)). The BOE is statutorily authorized to “administer and enforce the provisions of [the Code of Ethics] and the rules, regulations, and orders issued [t]hereunder with respect to public employees and elected officials....” La. R.S. 42:1132(C). The BOE is authorized to “conduct private investigations in carrying out [its] responsibilities and powers.... ” La. R.S. 42:1134(C). Furthermore, the BOE is authorized to pursue formal charges through either public or private hearings against an individual or entity for alleged violations of the Code of Ethics. *946 Ellis, 168 So.3d at 721 (citing La. R.S. 42:1132 and 1134).
The applicable version of La. R.S. 42:1141, prior to amendment and reenactment by La. Acts 2012, No. 608 § 1 (eff. June 7, 2012), is entitled “Procedure; adjudicatory board,” and details the procedures that govern the BOE’s investigation and pursuit of formal charges against persons or entities accused of violating the Code of Ethics. In pertinent part, the applicable version of La. R.S. 42:1141(C) states:
(1) Upon receiving a sworn complaint or voting to consider a matter as provided in Subsection B, a private investigation shall be conducted to elicit evidence upon which the panel as provided in this Section shall determine whether to recommend to the [BOE] that a public hearing be conducted or that a violation has not occurred. The accused and the complainant shall be given written notification of the commencement of the investigation not less than ten days prior to the date set for the | ¡¡commencement of the investigation. All determinations in this Subsection shall be by a majority vote of the panel. However, in cases where the panel consists of three members, all determinations of such a panel shall require a unanimous vote of the members of the panel.
(2) After the investigation has been completed, the [BOE] shall determine whether a public hearing should be conducted to receive evidence and to determine whether any violation of any provision of law within its jurisdiction has occurred. If a violation has not occurred, the defendant and the complainant shall be notified within ten days of the ruling.
(3)(a) If the [BOE] determines following an investigation that a public hearing should be conducted, the [BOE] shall issue charges. A public hearing shall be conducted to receive evidence relative to the facts alleged in the charges and to determine whether any violation of any provision of law within the jurisdiction of the [BOE] has occurred. The public hearing on such charges shall be conducted by the [EAB] in accordance with the [APA] and this Part.
[[Image here]]
(c) If the [BOE] does not issue charges within one year from the date upon which a sworn complaint is received or, if no sworn complaint was received, within one year from the date the [BOE] voted to consider the matter, the matter shall be dismissed.
In Ellis, 168 So.3d at 723-24, this court analyzed the statutory language of La. R.S. 42:1141(0(2) and held that the BOE must complete its investigation before filing formal charges against an individual accused of violating the Code of Ethics. There, it was explained that in order for the investigation to be complete, the BOE must possess evidentiary support to establish a prima facie case before filing formal charges. Ellis, 168 So.3d at 726. The court held that if the BOE files formal charges against an individual without first obtaining evidentiary support to establish a “simple prima facie case,” then the investigation is incomplete and the charges are subject to dismissal on an exception of prematurity or motion for summary | ¡¡¡judgment or similar pleading. Ellis, 168 So.3d at 726. Further, under the facts of that case, it was determined that the BOE had improperly filed charges against the respondent before completing its investigation and thus dismissed the formal charges as premature. Id.

Motion in Limine

In the instant case, Mr. Villere filed the underlying motion in limine subsequent to and based upon the decision in Ellis. Mr. Villere argued that in accordance with the *947 decision in that case, the BOE was “precluded from using evidence it acquired after March 17, 2011 ... to prove that [Mr.] Villere violated La. R.S. 42:1130.4.” Following arguments on the motion, the EAB granted same, ordering the exclusion of all evidence obtained by the BOE after the filing of formal charges against Mr. Vil-lere, including, but not limited to, the deposition of Mr. Coogan, the affidavits submitted by Ms. Lenfant and Mr. Lenfant, and the second deposition of Mr. Villere. The EAB reasoned that because the BOE was required to complete its investigation prior to filing formal charges, it was precluded from using evidence obtained after the filing of formal charges in the prosecution of its case against Mr. Villere. The EAB further explained that because the BOE maintained its investigation was complete prior to filing formal charges against Mr. Villere, any evidence obtained thereafter would only be cumulative.
We find that the EAB erred, as a matter of law, in granting the motion in limine in its entirety, based upon the EAB’s erroneous interpretation of the controlling jurisprudence. The motion in li-mine was properly granted as it pertained to the motion for summary judgment on the prima facie case. However, we find the EAB erred in granting the motion in li-mine as it pertained to the motion for summary judgment on the merits.
|nIn accordance with the decision in Ellis, the BOE was required to complete its investigation concerning the allegedly false and/or misleading campaign statements before filing formal charges against Mr. Villere. However, the EAB failed to recognize that there is an important distinction between the process of investigation and the process of discovery.[4] The prima facie case requirement does not, and cannot, obviate the BOE’s distinct right to conduct pretrial discovery in order to develop the evidence in preparation for the presentation of its case at trial.
The BOE is entitled to conduct pretrial discovery after the filing of formal charges in accordance with the provisions of the Louisiana Code of Civil Procedure in order to prepare for trial. See Ellis, 168 So.3d at 725 (“As for the issue of discovery, the [BOE] is correct that the Louisiana Code of Civil Procedure gives the [BOE] the right to conduct discovery in order to prepare for trial.”). The BOE’s right to conduct pretrial discovery after the filing of formal charges is also explicitly recognized by the Rules for the Board of Ethics, which provide:
A. Any public servant or other person who has been notified that he is to be the subject of a public hearing pursuant to the provisions of R.S. 42:1141(E), and the trial attorney and general counsel for the [BOE] shall be entitled to conduct discovery regarding any matter, not privileged, which is relevant to the pending public hearing. It is not grounds for objection that the information sought will be inadmissible at the hearing if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
B. Upon the filing of charges for violations of any law under the jurisdiction of the [BOE], the respondent and the [BOE], through its trial attorney(s) or *948 general counsel, shall be granted the right of discovery....
| iaLa. Admin. Code tit. 52, pt. 1, § 1101 (emphasis added). See also Villere, 2012 WL 1079316 at *3 (noting, although the issue was not raised in the writ application, that the BOE had the authority to take the deposition of Mr. Villere at that stage of the proceedings, i.e., subsequent to the filing of formal charges and prior to the trial on the matter) (citing La. R.S. 42:1141(E)(2)(a) (prior to repeal by La. Acts 2012, No. 608, § 2); La. Admin Code tit. 52, pt. 1, § 1101(B) and (C) (prior to amendment by the Department of Civil Service, Board of Ethics, Louisiana Register 39:1418 (June 2013)).
Therefore, the BOE was entitled to conduct pretrial discovery after the filing of formal charges in preparation for the presentation of its case against Mr. Villere and was entitled to use evidence obtained through discovery in the prosecution of its case on the merits. Thus, regarding the motion for summary judgment on the merits, the EAB erred in granting the motion in limine ordering the unrestricted exclusion of all evidence obtained by the BOE through discovery conducted after the filing of formal charges against Mr. Villere on March 17, 2011, including, for example, the second deposition of Mr. Villere, which this court found to be requested for good cause in Villere, 2012 WL 1079316 at *4.
. Motion for Summary Judgment on the Prima Facie Case
Notwithstanding the fact that the EAB erred in granting the motion in limine in its entirety, we caution that the relevance of evidence obtained by the BOE after the filing of formal charges is still limited. Evidence obtained by the BOE through pretrial discovery, after the filing of formal charges, should not be considered in determining whether the BOE completed its investigation or possessed sufficient factual support to establish a prima facie case. Thus, it is appropriate for the EAB to grant the motion in limine |1sto exclude evidence obtained after the filing of formal charges at this juncture of the proceeding. Accordingly, in the context of the instant case, we turn to consider the related issue of whether the BOE properly completed its investigation 1 before filing formal charges against Mr. Villere, which issue was raised as one of the two bases in support of the motion for summary judgment.[5]
The Rules for the Board of Ethics recognize the availability of the motion for summary judgment procedure in the context of ethics proceedings. See La. Admin Code tit. 52, pt. 1, § 1102(C) (“A motion for summary judgment may be filed by either the respondent or the trial attorney(s).”). Where the administrative tribunal dismisses charges through the granting of summary judgment, the appellate court reviews the motion for summary judgment in accordance with the rules governing summary judgment generally. See In re Fontenot, 14-0337 (La.App. 1 Cir. 12/30/14), 2014 WL 7455199, *1-2 (unpublished) (analyzing a motion for summary judgment in an ethics prqceeding under *949 La. C.C.P. art. 966). See also Bless Home Health Agency v. Louisiana Dept. of Health and Hospitals, 99-0936 (La.App. 1 Cir. 6/22/00), 770 So.2d 780, 783 (recognizing in the broader context of the APA that appellate courts review the grant of summary judgment in the same manner as all motions for summary judgment).
| uLouisiana Code of Civil Procedure art. 966(B)(2)[6] states that a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is' no genuine issue as to material fact, and that the movant is entitled to judgment as a matter of law. The summary judgment procedure is favored in law and is designed to secure the just, speedy, and inexpensive determination, of every action except those disallowed by La. C.C.P. art. 969. La. C.C.P. art. 966(A)(2).
The burden of proof on a motion for summary judgment remains with the mov-ant. However, if the movant .will not bear the burden of proof on the matter before the court on the motion for summary judgment, the movant need not negate all essential elements of the adverse party’s claim, action, or defense. Rather, the mov-ant must point out to the court that there is an absence of factual support for one or more essential elements to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish-that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(C)(2); Temple v. Morgan, 15-1159 (La.App. 1 Cir. 6/3/16), 196 So.3d 71, 76.
In order to determine whether the BOE properly completed its investigation before filing formal charges against Mr. Villere, it is first necessary for us to define the requisite prima facie case. Black’s Law Dictionary (10th ed. 2014) defines “prima facie” as that which is 11fi“[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true - on first examination, even though it make [sic] later be proved to be untrue....” Black’s Law Dictionary (10th ed. 2014) defines “prima facie case” as “[t]he establishment of a legally required rebuttable presumption[,] [and] ... [a] party’s production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party’s favor.”
In accordance with the jurisprudence and the plain language meaning of prima facie case, we find that the proper inquiry in these matters is whether the evidence in existence at the time of the filing of formal charges, viewed in -the aggregate, establishes that the BOE fully investigated the allegations and uncovered a factual basis sufficient to substantiate a probable violation of the Code of Ethics, notwithstanding that the presumption may later be proven to be untrue. If, on the other hand, the evidence establishes that the BOE did not uncover factual support to substantiate the allegations, but rather chose to file formal charges simply because prescription was accruing, then the charges are premature and subject to dis *950 missal. See and compare Ellis, 168 So.3d at 724-26.
In this case, in support of the motion for summary judgment on the prima facie case requirement, Mr. Villere argued that the 11fiBOE did not have any evidence at the time of the filing of the formal charges against him tending to establish that he knew any of the campaign statements were false at the time of distribution. Mr. Villere pointed out that he had testified he did not believe any of the campaign statements were false at the time the statements were made. Mr. Vil-lere also argued the fact the BOE had requested a second deposition after filing formal charges proved that the BOE did not have any evidence at the time of the filing of the formal charges tending to establish that he knowingly distributed false information.
In opposition to the motion for summary judgment, the BOE argued, in pertinent part, that it had properly completed its investigation and uncovered factual support sufficient to establish a prima facie case before filing formal charges against Mr. Villere. The BOE attached various documentary evidence in support of its opposition to the motion for summary judgment relative to the issue of the prima facie case requirement, including, amongst other things, a copy of the confidential investigative summary prepared for its consideration.
The investigative summary is particularly germane in determining whether the BOE properly completed its investigation in this matter, since Mr. Villere judicially acknowledged that the BOE relied upon the investigative summary in voting to file formal charges against him. In addition, the investigative summary is significant because it analyzes the campaign statements contained within the campaign flyer and the campaign email; details the investigative efforts undertaken by the BOE, through its agents and/or attorneys, following the referral of the confidential complaint; and sets forth the factual basis underlying the BOE’s decision to file formal charges against Mr. Villere.
First, with respect to count one, the investigative summary analyzes the campaign statements contained within the campaign flyer. For example, the first bullet point of the campaign flyer, which was also submitted into evidence on the motion for summary judgment, states that Ms. Lenfant reported in her personal financial disclosure report that her husband worked for the same insurance company that provided the City of Mande-ville’s insurance and states that she voted three times to give the insurance contract |17to her husband’s company. The investigative summary concludes that this statement contains “demonstrably inaccurate” information. The investigative summary cites several sources of information in support of this finding, including an interview conducted with Mr. Lenfant; council meeting minutes from January of 2003, January of 2004, and January of 2005; online information and reporting concerning corporate mergers; intergovernmental memorandum and insurance quotes; and handwritten notes from Mr. Villere’s paid political consultant, Ms. Smith.
While the investigative summary does acknowledge that Mr. Villere testified he believed the campaign statements to be true at the time of publication, the investigative summary also points to the existence of contrary circumstantial evidence tending to establish that Mr. Villere knowingly distributed or caused to be distributed, with the intent of misleading the voters, the allegedly false information about Ms. Lenfant. Specifically, with respect to the statement concerning Ms. Lenfant’s *951 voting record, the investigative summary states:
The city’s insurance in January 2003 and January 2004 was with a company, St. Paul, for which Mr. Lenfant did' not work. In April 2004, St. Paul merged with Travelers, Mr. Lenfant’s employer. In January 2005 the council voted to move the property and casualty insurance policy away from St. Paul and to Risk Management, Inc., and Hanover Insurance. Thus, the statement is false when it says that Ms. Lenfant voted three times to award the insurance contract to “her husband’s company”, because in each of the three votes the company receiving the contract was not Mr. Lenfant’s employer. The handwritten notes provided by Ms. Smith demonstrate that Mr. Villere’s campaign was diligently researching these facts, since they changed the number of votes from “four” to “three” in the final version.
Second, with respect to count two, the investigative summary analyzes the campaign statements within the campaign email. In the email, 11sMr. Villere purported to confirm the accuracy of the prior campaign statements and stated that the campaign statements were all true and a matter of public record. The investigative summary concludes that through his publication of the campaign email, Mr. Villere knowingly distributed false information, with the intent to mislead voters, about his opponent, Ms. Lenfant. For example, the investigative summaty notes that despite Mr. Villere’s representation that the prior campaign statements were all a matter of public record, he had been unable to provide substantiating documentation to support some of the campaign statements in response to a subpoena duces tecum and had instead testified that he relied upon his personal knowledge and observations in making such statements.
In sum, the evidence in the record establishes that, prior to filing formal charges against Mr. Villere, the BOE adequately investigated the allegations and uncovered factual support sufficient to establish a prima facie case that Mr. Villere violated the Code of Ethics through his initial publication of the campaign flyer and through his subsequent confirmation of the veracity of the prior statements and representation that the statements were a matter of public record. The fact that the BOE exercised its right to conduct pretrial discovery in preparation for the presentation of its case after the filing of formal charges does not alone prove that the BOE filed the charges to defeat prescription prior to completing its investigation.

Motion for Summary Judgment on the Merits

The second issue set forth in the motion for summary judgment concerns whether there were genuine issues of material fact regarding the alleged violations of La. R.S. 42:1130.4. Louisiana Revised Statute 42:1130.4 provides: “No candidate in an election shall, with the intent to mislead the voters, distribute or cause to be distributed any oral, visual, or 11swritten material containing any statement which he knows makes a false statement about another candidate in the election.”
In order to prove that a violation of La. R.S. 42:1130.4 has occurred, the BOE must establish: 1) that the alleged violator was a candidate in an election; 2) that the candidate distributed or caused to be disturbed any oral, visual, or written material; 3) that the distributed material contained any false statement about another candidate; 4) that the candidate knew the statement was false; and 5) that the candidate intended to mislead the voters through the use of the statement.
In this case, it is undisputed that Mr. Villere was a candidate in the mayoral *952 election of March 27, 2010 and that he distributed or caused to be distributed the campaign statements contained within the written campaign flyer and follow-up email. Thus, in order to prove that Mr. Villere violated La. R.S. 42:1130.4, the BOE was required to prove that the written campaign materials contained false information about Ms. Lenfant, that Mr. Vil-lere knew that the campaign statements were false, and that Mr. Villere intended to mislead the voters through his publication of the campaign statements.
In support of the motion for summary judgment relative to the alleged violations of La. R.S. 42:1130.4, Mr. Villere argued that the BOE could not prove that any of the written campaign materials contained false statements about Ms. Lenfant. In the alternative, Mr. Villere argued that the BOE could not prove that he knew the statements were false or intended to mislead the voters through his publication of the campaign statements. In support of his motion for summary judgment on this issue, Mr. Villere submitted and cited his March 3, 2011 deposition, wherein he testified that he believed all of the campaign statements were true.
|2nIn opposition to the motion for summary judgment, the BOE argued, in pertinent part, that there were genuine issues of material fact remaining as to the question of whether Mr. Villere knowingly distributed or caused to be distributed, with the intent to mislead voters, false campaign statements about his opponent, Ms. Lenfant. In support of its opposition on this point, the BOE attached various documentary evidence, including transcripts of the first and second depositions of Mr. Villere, Ms. Lenfant’s affidavit, and a transcript of Mr. Coogan’s deposition.
Following the arguments of counsel and submission of evidence on the motion, the EAB found there were no genuine issues of material fact as to the alleged violations of La. R.S. 42:1130.4. The EAB reasoned that Mr. Villere was entitled to judgment as a matter of law because the BOE “[l]ack[ed] any evidence tending to prove [Mr. Villere’s] subjective state of mind,” and would not be able to prove that Mr. Villere “published the campaign statements with reckless disregard for the truth or with intent to mislead voters.” The EAB stressed that Mr. Villere testified that he believed the campaign statements were true at the time of publication, and the EAB noted that the sole evidence pertaining to Mr. Villere’s state of mind was his own sworn testimony.
Critically though, as explained above, in rendering judgment in favor of Mr. Villere on the motion for summary judgment on the merits, the EAB excluded consideration of all evidence obtained by the BOE through discovery conducted after the filing of formal charges. We find the EAB’s erroneous exclusion of this evidence to be significant, since the BOE was entitled to use evidence obtained through discovery in the prosecution of its case on the merits against Mr. Villere; moreover, the evidence helps to | ¾1 establish that there are genuine issues of material fact which preclude the granting of summary judgment.
First, with respect to count one, the evidence established that there are genuine issues of material fact regarding the falsity of several of the subject campaign statements within the campaign flyer. For example, in the written campaign flyer, Mr. Villere stated that Ms. Lenfant took city-owned portable air conditioners and generators for her personal use. In her affidavit, Ms. Lenfant acknowledged that the City of Mandeville had provided her with a generator to conduct official business after Hurricane Katrina. However, Ms. Lenfant also expressly stated that “[she] was never provided an air condition *953 ing unit by the City of Mandeville.” Such conflicting testimony raises a question of fact that is to be resolved by the trier of fact.
Likewise, in his campaign flyer, Mr. Vil-lere stated that Ms. Lenfant’s home was appraised at nearly $560,000, whereas her “next-door neighbor’s house” was listed for sale at $1.6 million. In her affidavit, Ms. Lenfant stated that her home was located at 16 Preserve Lane, in The Preserve neighborhood, while the “next-door neighbor’s house” referenced in the campaign flyer was located at 52 Preserve Lane, in The Sanctuary neighborhood. Ms. Lenfant stated that the two neighborhoods were “separate and distinct” and were “physically separated ... by fencing, signage, landscaping, and an electronic entrance gate.” Ms. Lenfant stated that “[a]t least eight (8) unimproved lots and the aforementioned fencing, signage, landscaping, and an electronic entrance gate are between ... 16 Preserve Lane and 52 Preserve Lane.” It is for the trier of fact to determine what constitutes a “next-door neighbor’s house.”
Second, with respect to count two, the evidence establishes that there are genuine issues of material fact regarding the falsity of the campaign ^statements within the campaign email. In the email, Mr. Villere purported to confirm that the prior campaign statements were all true, extensively researched, and a matter of public record. Yet, the evidence submitted for purposes of the motion for summary judgment indicates that not all of the prior campaign statements were a matter of public record. For example, in the campaign flyer, Mr. Villere stated that Ms. Lenfant voted for a six-inch fill-limit ordinance after using six feet of fill on her personal property. The factual accuracy of this statement is disputed, based in part upon the limited application of the subject ordinance to certain structures. Still, it is dispositive for purposes of the motion for summary judgment relative to count two that, contrary to his representation in the email, Mr. Villere testified he based the statement concerning the amount of fill placed upon Ms. Lenfant’s property upon his own observation and “belief.”
Finally, as to both count one and count two, there are remaining genuine issues of material fact regarding the issues of knowledge and intent. Here, we note that, as a general rule, summary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts such as intent, motive, malice, good faith, or knowledge. See Greater Lafourche Port Comm’n v. James Const. Group., L.L.C., 11-1548 (La.App. 1 Cir. 9/21/12), 104 So.3d 84, 88.
In the context of the instant ease, the EAB erred in finding that the sole evidence pertaining to Mr. Villere’s state of mind was his own sworn testimony, insofar as the issues of knowledge and intent may also be measured by objective indices and circumstantial evidence. Indeed, “[w]hen intent is disputed in a civil or criminal action, proof of intent or state of mind | ^is rarely established as a fact by direct evidence,[7] but may be inferred from the facts surrounding the individual’s actions or other circumstances.” S.G. v. City of Monroe, 37,103 (La.App. 2 Cir. 4/11/03), 843 So.2d 657, 662 (emphasis added).
In conclusion, the record contains questions of fact as to whether the campaign statements contained false information about Ms. Lenfant, whether Mr. Villere *954 knew the campaign statements were false, and whether Mr. Villere intended to mislead the voters through his publication of the campaign statements. Thus, the EAB erred in granting the motion for summary judgment based upon its determination that there were no genuine issues of material fact as to the alleged violations of La. R.S. 42:1130.4.
DECREE
For the foregoing reasons, we affirm the granting of the motion in limine as it pertains to the motion for summary judgment on the prima facie case and reverse the granting of the motion in limine as it pertains to the motion for summary judgment on the merits. The granting of the motion for summary judgment is reversed. We hereby remand this case to the Louisiana Ethics Adjudicatory Board for further proceedings in accordance with the pronouncements of this opinion. All costs of this appeal are assessed to Donald Villere.
AFFIRMED IN PART, REVERSED IN PART; REMANDED.

. The confidential investigative summary submitted to the BOE for its consideration indicates that, amongst other things, during the investigative period the BOE reviewed documentation provided by counsel for Mr. Vil-lere, documentation from the Secretary of State of Louisiana, handwritten notes prepared by Ms. Smith during the campaign, and photographs depicting relevant properties at issue in the matter.

. In count one, the BOE charged that Mr. Villere violated La. R.S. 42:1130.4 when he distributed or caused to be distributed, with the intent to mislead voters, the written campaign flyer which he knew contained false statements about his opponent, Ms. Lenfant. In count two, the BOE charged that Mr. Vil-lere violated La. R.S. 42:1130.4 when he distributed or caused to be distributed, with the intent to mislead voters, the written email which he knew contained false information about his opponent, Ms. Lenfant.

. Mr. Villere styled his filing as a "Motion for Summary Disposition.” We interpret such motion as a motion for summary judgment. See Ellis, 168 So.3d at 718 ("[The respondent] filed a motion to stay discovery, as well as a motion for summary disposition (i.e„ summary judgment).... ”).

. Black’s Law Dictionary (10th ed. 2014) defines discovery as "[t]he act or process of finding or learning something that was previously unknown[,]” and “[t]he pretrial phase of a lawsuit during which depositions, interrogatories, and other forms of discovery are conducted.” In contrast, Black’s Law Dictionary (10th ed. 2014) defines investigation as "[t]he activity of trying to find out the truth about something, such as a crime, accident, or historical issue....”

. Mr. Villere raised two grounds in support of his motion for summary judgment; first, he argued that the BOE did not complete its investigation before filing formal charges, and, second, he argued that there were no genuine issues of material fact as to the alleged violations of La. R.S. 42:1130.4. In ruling upon the motion for summary judgment, the EAB primarily focused its analysis on the issue of whether the BOE could satisfy its evidentiary burden of proof at trial. However, in the interest of justice and in light of the issues fully briefed on appeal, we find it appropriate to consider both grounds raised by Mr. Villere in support of his motion for summary judgment. See La. C.C.P. art. 966(F)(1) (prior to amendment by La. Acts 2015, No. 422 § 1 (eff. January 1, 2016)).

. Louisiana Code of Civil Procedure art. 966 was amended and reenacted by La. Acts 2015, No. 422 § 1 (eff. January 1, 2016). The amended version of La. C.C.P. art. 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the act; therefore, we refer to the former version of the article in this opinion.

7. Direct evidence of intent comes from the actor himself, who can admit or deny the alleged state of mind. City of Monroe, 843 So.2d at 662.